UNITED STATES OF AMERICA

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 17-CR-00070** |
| | * | **CRIMINAL NO. 16-CR-00157** |
| | * | |
| **VERSUS** | * | **JUDGE FOOTE** |
| | * | |
| | * | |
| **CHRISTOPHER DOUGLAS** | * | **MAGISTRATE JUDGE HORNSBY** |

### RESPONSE BY THE UNITED STATES TO DEFENDANT'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255

NOW INTO COURT, through the undersigned Assistant United States Attorney, comes the United States of America, who pursuant to this Court's order files this response in opposition to the defendant's motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 as follows:

### INTRODUCTION

This defendant, who was resentenced after a remand by the Fifth Circuit, raises frivolous claims concerning his sentencing and his attorney. This case entails a single sentence imposed on remand arising out of two separate criminal prosecutions—one initiated in the Eastern District of Texas that concerned a kidnapping, and one initiated in the Western District of Louisiana that concerned drug trafficking activity. The defendant consented to the transfer to the Western

District of Louisiana of the charges addressing the kidnapping conduct. Following a remand for re-calculation of the advisory range, the defendant was sentenced on both cases to a 387-month sentence, which was 60 months above the top of the advisory guideline range.

## FACTS[1]

*The Kidnapping Conduct*

Between approximately June 1, 2014, and January 1, 2016, Christopher Douglas was a member of a criminal organization headed by Cory Mitchell, which targeted individuals involved in drug trafficking. These individuals were selected as victims because they were likely to possess large quantities of cash or drugs and were unlikely to report crimes committed against them to law enforcement. (PSI,[2] paras. 23-25).

On or around the evening of March 25, 2015, Mitchell, Douglas, and another group member named Montonious Robinson assaulted and kidnapped QB, a known drug dealer, from a residence in Longview, Texas. The men tied QB up and put him in the trunk of his own vehicle. He later managed to escape and was found in the middle of the road in Carthage, Texas. (PSI, paras. 26-29).

---

[1] In this response, references will be made to both docket numbers, 16-CR-0157 and 17-CR-70.

[2] PSI refers to presentence investigation report.

*The Drug Conduct*

On April 26, 2016, a confidential informant, under the direction of the FBI and the Sabine Parish Sheriff's Office, purchased 37.49 grams of methamphetamine from Douglas in Many, Louisiana.  Douglas charged the informant $2,000 for the drugs. (16-CR-0157 Rec. Doc. 26-2; PSI, para. 41).

On May 3, 2016, Douglas engaged in another transaction with a confidential informant.  That time, the informant purchased 27.44 grams of methamphetamine for $1,500.  That transaction also involved the purchase of a firearm, a Romanian WASR-10 AK-47 rifle with an extended magazine, for $800.   (PSI, para. 43).

## PROCEDURAL HISTORY

*Indictment and Guilty Plea*

On June 22, 2016, Douglas was charged by Indictment in the Western District of Louisiana with two counts of distribution of 5 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Counts 1 and 2), and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 3).  (16-CR-157 Rec. Doc. 1).  On September 21, 2016, the defendant was charged by Superseding Indictment in the Eastern District of Texas with, among other charges, conspiracy to commit kidnapping, in violation of 18 U.S.C. §§ 1201(a) and (c) (Count 6).  On March 13, 2017, the defendant consented, in writing, to transfer of the kidnapping charges from the Eastern District of Texas to the Western District of Louisiana, pursuant to Fed. R. Crim. P. 20.  The Western District of Louisiana accepted transfer, and on

April 6, 2017, the defendant pleaded guilty to Count 6 of the Eastern District of Texas Superseding Indictment (the kidnapping charge) and Count 1 of the Western District of Louisiana Indictment (the drug charge). (16-CR-157 Rec. Docs. 25-26; 17-CR-70 Rec. Docs. 1-5).

*Initial Sentencing*

On October 11, 2017, a combined sentencing hearing was held on both sets of conduct. As to the kidnapping conduct, Douglas was sentenced to 324 months, near the high end of the 262-327 month range. Douglas was ordered to serve that sentence consecutively to any sentence imposed in a revocation matter pending in a Louisiana state court at that time. (16-CR-157 Rec.Doc. 34; 17-CR-70 Rec. Doc. 11)

As to the drug conduct, Douglas was sentenced to 192 months, the lower end of the 188-235 month range. The Court similarly ordered Douglas to serve that sentence consecutively to any state revocation sentence that might be imposed. Douglas was ordered to serve 96 months of this sentence concurrently with the sentence imposed for the kidnapping conduct, and 96 months consecutively to that sentence. Accordingly, the defendant's total federal sentence (considering both charges) was 420 months. (16-CR-157 Rec. Doc. 34; 17-CR-70 Rec. Doc. 11).

*The First Appeal*

Although on appeal Douglas challenged only the substantive reasonableness of his two sentences, the Fifth Circuit exercised its discretion to correct a guidelines calculation error not raised by the defendant either below or on appeal: not

determining a single advisory range for the two sets of conduct, in accordance with U.S.S.G. § 5G1.2. Finding the error affected his substantial rights, the Fifth Circuit vacated and remanded the case for resentencing "in accordance with this opinion." *United States v. Douglas*, 910 F.3d 804, 808 (5th Cir. 2018) ("*Douglas* I"). (16-CR-157 Rec. Doc. 43; 17-CR-70 Rec. Doc. 21).

## *Re-sentencing*

### *The Final Version of the Revised PSI*

Pursuant to the Court's order, the probation officer prepared a revised, unified PSI that treated the two sets of conduct as separate groups. (16-CR-157 Rec. Doc. 44; 17-CR-70 Rec. Doc. 22). As to the kidnapping conduct, the final version of the revised PSI recommended a base offense level of 32, pursuant to § 2A4.1(a), to which the following enhancements were added: 6 levels under § 2A4.1(b)(1), because a ransom demand was made; 2 levels under § 2A4.1(b)(2)(B), because the victim sustained bodily injury; and 2 levels under § 2A4.1(b)(3), because a dangerous weapon was used. These produced an adjusted offense level subtotal of 42 for the kidnapping conduct. (PSI, paras. 51-58).

As to the drug conduct, the final version of the revised PSI recommended a base offense level of 24, pursuant to §§ 2D1.1(a)(5) and (c)(2), to which 2 levels were added under § 2D1.1(b)(1) because a firearm was possessed in connection with the criminal activity. Those produced an adjusted offense level subtotal of 26 for the drug conduct. (PSI, paras. 59-64).

The application of the guidelines' multiple count adjustment rules, U.S.S.G. §§ 3D1.4(a)-(c), produced no increase in the offense levels. (PSI, para. 66). That calculation resulted in a combined adjusted offense level of 42. Subtracting 3 levels for the defendant's acceptance of responsibility produced a total offense level of 39.[3] (PSI, paras. 68-73).

The defendant's criminal history calculation was unchanged from the PSIs prepared prior to his initial sentencing: he was assessed 18 points for 15 prior convictions, and two additional points were added because he committed the instant offense while serving a sentence for a prior conviction, resulting in 20 criminal history points and a Criminal History Category VI. (PSI, paras. 76-109).

Douglas' offense level of 39 and his Criminal History Category VI correlated to an advisory range of 360-life. (PSI, para.137). The PSI identified as a potential grounds for upward departure the fact that the combined offense level might not reflect the seriousness of the defendant's overall conduct, U.S.S.G. § 3D1.4; and the fact that the defendant's criminal history understated the extent of his criminal history, U.S.S.G. § 4A1.3. (PSI, paras. 160-169).

The United States did not object to the PSI. The defendant raised ten objections including objections to the upward departure suggestion, the enhancements for the ransom request, serious injury and dangerous weapon. He

---

[3] The PSI noted that Douglas qualified as a career offender, but the offense level under those provisions was lower than the "otherwise applicable" offense level. (PSI, para. 72).

asserted he should have been sentenced for "attempted kidnapping," since the offense was not completed. (Fourth Addendum to PSI).

*Re-sentencing*

In anticipation of re-sentencing, defense counsel submitted two letters with attachments intended to serve as sentencing memoranda. In those submissions, counsel provided an update on Douglas' medical condition and advised that since the time of his initial sentencing, he had completed several educational and life-skills programs. Counsel requested a sentence of 240 months' incarceration. Counsel also submitted a variety of letters from friends and family, as well as two personal letters from Douglas addressed to the district court in which he expressed his remorse and asked for leniency.

On January 30, 2020, a re-sentencing hearing was held. The Court began the proceeding by addressing the scope of the appellate mandate. Noting the discussion in *Douglas* I of the proper application of the grouping rules, and the determination that the correct range should have been 262-327 months (based on an offense level of 37 and a Criminal History Category VI), *Douglas* I, 910 F.3d at 807-08, the Court stated it "would not disturb this calculation …." (Sent. Tr. at 2-5). However, the Court concluded it was nonetheless equitable to address Douglas' new objections to the PSI, particularly in light of his claims in letters to the Court that prior counsel had failed to raise those objections at his initial sentencing. (Sent. Tr. at 6, 7).

In reviewing the defendant's objections, the Court first noted that adopting the Fifth Circuit's guideline calculation from *Douglas* I eliminated from its consideration

7

the six-level enhancement under § 2A4.1(b)(1) that typically applies when a ransom demand is made, as that enhancement was not assessed when Douglas was sentenced the first time. (Sent. Tr. at 7-9). Removing that enhancement meant Douglas' offense level would be determined by the career offender provisions, as the offense level supplied by those provisions (37) was then higher than the otherwise-applicable offense level. Because the career offender guideline applied, the other objections to the enhancements were rendered moot. (Sent. Tr. at 19).

Although the application of the career offender provisions rendered the objection moot, the Court addressed the defendant's objection to a finding the kidnapping victim sustained "serious bodily injury" for purposes of § 2A4.1(b)(2)(B). In overruling that objection, the Court relied on statements in the factual stipulation offered in support of the guilty plea that the kidnappers beat QB with a hammer and later drove over him with a car, leaving him for dead, and that police found him, covered in blood, in the middle of the road. (Sent. Tr. at 15.). For the same reasons, the Court overruled Douglas' objection to the § 2A4.1(b)(3) enhancement, which applies when a dangerous weapon is used, and noted its application was supported by the factual stipulation. The Court concluded that objection was moot because "the application of the career offender guideline drives the range in this case." (Sent. Tr. at 14).

As to Douglas' two objections to the other criminal conduct set forth in the PSI—the kidnapping of the minor child and the murder of Ashton Randle—the Court determined neither objection required a ruling, as neither affected the advisory

range. (Sent. Tr. at 15, 16). The Court also noted Douglas' assertion that he was not involved in either incident, and that the district attorney had declined prosecution on the Randle matter because of insufficient evidence. (Sent. Tr. at 16).

The Court overruled Douglas' objection that he should be sentenced for an attempted kidnapping, which was subject to a lower statutory penalty, because the victim got away before ransom was paid. The Court characterized that argument as "utterly frivolous" and unsupported by the law applicable to the count of conviction, kidnapping conspiracy under § 1201(c). (Sent. Tr. at 17, 18).

The Court then reviewed the final guideline calculation and noted that Douglas' offense level (supplied by the career offender provisions) was 37; that he was entitled to a 3-point reduction for acceptance of responsibility; and that his final range, based on a total offense level of 34 and a Criminal History Category VI, was 262-327 months. Counsel for both parties agreed the guideline calculation was correct. (Sent. Tr. at 20-22).

The Court then noted it had received "a number of sentencing materials" from the defendant, including medical records and letters from both the defendant and others writing on his behalf. The Court stated it had "read them all." (Sent. Tr. at 25).

Douglas then made a personal statement and expressed his remorse. (Sent. Tr. at 25). Defense counsel also addressed the Court, Douglas' "troubled past" and asked for a sentence that would give him "a chance at life once he gets out of prison." Counsel requested a below-guideline sentence. (Sent. Tr. at 26-27).

9

In response, the Court noted the statements in the PSI identifying possible grounds for an upward departure and sought argument from defense counsel on that subject. Defense counsel opposed an upward departure. He asserted that the defendant's criminal history was adequately accounted for under the career offender provisions. He argued that while it was true that as a result of the application of the Chapter Three grouping provisions, U.S.S.G. § 3D1.1 et seq., the drug conduct was "disregard[ed]," that was by operation of the guidelines themselves, and the Sentencing Commission's judgment should be honored. (Sent. Tr. at 27-29).

The Court noted the unusual "procedural posture" of the case, which arose out of the fact that two entirely unrelated sets of conduct—a Texas kidnapping and some Louisiana drug trafficking—were sentenced in the same proceeding as a result of the Rule 20 transfer of the kidnapping charges. The Court expressed its belief that it was unlikely Congress and the Sentencing Commission intended that a transfer "for expediency and efficient use of resources [would] become a legal strategy that would reduce a defendant's overall exposure." (Sent. Tr. at 33). As the Court detailed, absent a transfer, the defendant would have faced a range of 262-327 months in Texas and a range of 188-237 months in Louisiana, with a possibility that one of those sentences might be served consecutively, or partially consecutively, to the other. (Sent. Tr. at 34).

The Court focused on the defendant's extensive criminal history, which it believed was not adequately captured even by his Criminal History Category VI status. On that ground, the Court imposed a sentence of 387 months, 60 months

10

above the high end of the advisory range. The Court pointed out the defendant had 20 criminal history points, based on 5 adult felony convictions and 10 adult misdemeanor convictions. And what was "most disturbing" about those convictions was "the violence involved, especially the recent escalation and the nature of this crime." The Court also highlighted the defendant's many failures on supervision, including at least one probation revocation and four parole revocations. This record reflected "a callous disregard for the victims and a disrespect for human life and the law." Alternatively, the Court noted "an upward variance is justified under the factors contained in 3553(a) pertaining to the criminal history, personal characteristics, and involvement in the instant offense." The sentences on the two counts of conviction are to be served concurrently to each other, but consecutively to a state revocation sentence. (Sent. Tr. at 37, 38).

## *Second Appeal*

In affirming the defendant's sentence, the Fifth Circuit rejected the defendant's claim that the new aggregated 387-month sentence was vindictive as it was less severe than the previous aggregated sentence of 420 months. The Fifth Circuit found that contrary to the defendant's assertion, when it imposed the sentence, the Court did not mention an arrest. Rather the Court had explained that the defendant had "20 criminal history points based on convictions including violent crimes that had been recently escalating." In rejecting the defendant's argument that his sentence was substantively unreasonable because the Court failed to consider mitigating evidence and placed too much weight on his criminal history, the Fifth

11

Circuit first noted that the Court had noticed at sentencing that it had reviewed all the material submitted by the defendant, including letters and medical records.

The Fifth Circuit then stated, "Moreover, the district court assessed the facts and provided specific reasons consistent with the § 3553(a) factors to support its determination that a sentence outside of the guidelines range was necessary to achieve the goals of sentencing." The Fifth Circuit concluded by finding meritless the defendant's claim that his sentence was unconstitutional in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. (16-CR-57 Rec. Doc. 79; 17-CR-70 Rec. Doc. 62).

### *Representation*

On September 6, 2016, Taylor Townsend enrolled as counsel for the defendant. (16-CR-157 Rec. Docs. 15-16). He represented the defendant through the first appeal. After the case was remanded, on March 14, 2019, the defendant filed a pro se motion to dismiss his retained attorney. (16-CR-157 Rec. Doc. 47; 17-CR-70 Rec. Doc. 25). The defendant was ordered to hire a new attorney, continue with Mr. Townsend or file a motion for the appointment of an attorney. (16-CR-157 Rec. Doc. 48; 17-CR-70 Rec. Doc. 26).

On April 1, 2019, the defendant filed a motion requesting appointed attorney granted by the Court. J. Greenwald was appointed to represent the defendant. (16-CR-157 Rec. Docs. 50, 53, 54; 17-CR-70 Rec. Docs. 27-29). He represented the defendant at the resentencing and on appeal.

# ARGUMENT

A. APPLICABLE LAW

### *1. Law applicable to 28 U.S.C. § 2255*

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam). "[A] collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). In a motion to vacate, set aside or correct sentence, a defendant may present four cognizable grounds, which include the following: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Even if the issues are constitutional or jurisdictional, the defendant may be procedurally barred from raising them collaterally because collateral review is fundamentally different from and may not replace a direct appeal. *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc).

If claims of constitutional or jurisdictional import are not raised on direct appeal, the claims are procedurally defaulted and can only be considered in a § 2255 proceeding if a movant can show cause for his failure to raise his claims on appeal and actual prejudice resulting from the alleged errors. *Placente*, 81 F.3d at 558

("[A] defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both cause for his procedural default and actual prejudice due to any such error."); *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) ("When raising issues of jurisdictional or constitutional magnitude for the first time on collateral review, a defendant ordinarily must show both cause for his procedural default and actual prejudice resulting from the error."). Even if a defendant cannot establish cause or prejudice, procedurally defaulted claims can be considered for the first time in a § 2255 proceeding if the movant can show that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' or actual 'prejudice' . . . or that he is 'actually innocent.'").

Attorney error may constitute "cause" for a procedural default; however, the defendant must show that counsel's actions or inactions amounted to ineffective assistance of counsel. *Cotton v. Cockrell,* 343 F.3d 746, 754-755 (5th Cir. 2003) (*citing Murray v. Carrier*, 477 U.S. 478 (1986)). Thus, "attorney error short of ineffective assistance of counsel" in the constitutional sense "does not constitute cause for a procedural default." *Murray,* 477 U.S. at 492. Ineffective assistance adequate to establish "cause" for the procedural default of a constitutional claim must be proven in accordance with the principles set forth by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). *See Cotton v. Cockrell*, 343 F.3d at 754-755. As discussed below, the defendant has not established that his counsel was

14

ineffective as required under *Strickland* and, thus, has not overcome the procedural bar.

### 2. *Ineffective assistance of counsel*

Allegations concerning the performance of one's attorney can be considered under 28 U.S.C. § 2255 without the defendant overcoming the procedural bar. *Massaro v. United States*, 538 U.S. 500, 509 (2003) (holding that claims of ineffective assistance of counsel may be raised for the first time in a proceeding under 28 U.S.C. § 2255); *United States v. Ramos*, 801 F. App'x 216, 226 (5th Cir. 2020) (citing *Massaro* for proposition that "[t]he Supreme Court has emphasized that a 28 U.S.C. § 2255 motion is the preferred method for raising claims of ineffective assistance of counsel).

To prevail on a claim that legal representation fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must show that his attorney's actions were objectively unreasonable and that his attorney's unreasonable actions resulted in prejudice. *United States v. Valdez*, 973 F.3d 396, 402 (5th Cir. 2020) (reiterating two-prong *Strickland* test); *United States v. Phea*, 953 F.3d 838, 841 (5th Cir. 2020) (same).

The former component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Anderson v. Collins*, 18 F.3d 1208, 1215 (5th Cir. 1994) (citing *Strickland*, 466 U.S. at 689). To meet the second prong of *Strickland*, the defendant must show that

counsel's deficient performance resulted in actual prejudice to the defendant. Thus, the defendant must show there is a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 695. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694.

The defendant must establish both prongs of this test. *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997); ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."). *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").

B.  APPLICATION OF LAW TO THIS CASE

### *1. The defendant's meritless claims regarding his sentencing are presently not cognizable and are also procedurally barred.*

The defendant's challenge to his sentence is not cognizable, as he has not presented constitutional or jurisdictional challenges. In addition, any claims are procedurally barred. The defendant could have raised these issues on appeal. The defendant has not established the requisite cause and prejudice. Cause can be ineffective assistance of counsel, which the defendant cannot establish. Nevertheless, these claims have no merit.

The defendant contends that in contravention of the Fifth Circuit's opinion, the Court sentenced the defendant *de novo* and ordered a new presentence investigation report. However, as the sentencing transcript demonstrates, the Court meticulously

assured that it was following the mandate of the Fifth Circuit. The Court indicated that it was not disturbing the guideline calculations in the Fifth Circuit opinion, which included a Criminal History Category of VI, an offense level of 37 and a guideline range of 262 to 327 months. However, the Court stated, "The Fifth Circuit opinion does leave open the question of whether or not the district court would depart upward or downward in this matter. The Court explicitly stated that the mandate rule allowed "some leeway in exceptional circumstances" that the Court found present. (Sent. Tr. at 5). Furthermore, as the Court's statements indicate, part of the reason for requesting a new presentence report was for the benefit of the defendant, who had complained that his previous attorney had not objected to the presentence report during the first sentencing. (Sent. Tr. at 6. 7).

His assertion that he was not permitted to object to a six-level enhancement in the presentence investigation report is contradicted by the record showing that the attorney did object. (Sent. Tr. at 7, 9). Most importantly, the Court did not apply that enhancement. (Sent. Tr. at 9).

The defendant's reference to 18 U.S.C. § 3742(g)(2) is frivolous. In *Pepper v. United States*, 562 U.S. 476 (2011), that specific provision, 18 U.S.C. § 3742(g)(2), was rendered invalid. *See United States v. Gonzalez*, 540 F. App'x 346, 347 (5th Cir. 2013) ("The Supreme Court has held that § 3742(g)(2) is unconstitutional.").

As the above detailed description of the second sentencing hearing demonstrates, the Court made sure that it addressed all possible issues or objections the defendant might have. In fact, many of those objections were moot because of the

17

career offender status of the defendant. The Court, nevertheless, discussed them at length to make sure the defendant was satisfied. (Sent. Tr. at 11, 36).

The defendant cannot point to any facet of the sentencing that was unconstitutional. Nevertheless, he has not overcome the procedural bar.

### 2. *Contrary to the defendant's assertions, the attorney did object to an enhancement.*

The defendant alleges that his attorney was ineffective at sentencing. To show that an attorney's performance at sentencing in a noncapital case was prejudicial under *Strickland*, the defendant must demonstrate that counsel's error led to some increase in the length of his imprisonment. "[A]ny amount of actual jail time has Sixth Amendment significance." *Glover v. United States*, 531 U.S. 198, 203, 209 (2001) (finding that the defendant was prejudiced when he was sentenced under the incorrect guideline range based on an elevated Offense Level due to his counsel's erroneous sentencing calculation); *United States v. Herrera*, 412 F.3d 577, 581 (5th Cir. 2005) (underestimating possible sentence by 27 months constituted deficient performance); *United States v. Conley*, 349 F.3d 837, 842 (5th Cir. 2003) (failing to object to 120 months when maximum penalty was 60 months constituted prejudice*); United States v. Franks*, 230 F.3d 811, 815 (5th Cir. 2000) (finding that the defendant was prejudiced by his counsel's failure to object to an improper enhancement, which increased his overall offense level and his sentencing guideline range).

The defendant's argument is frivolous. The attorney did object to the six-level enhancement and to the sentence. (Sent. Tr. at 7-9). The sentencing transcript shows that the attorney was effective in raising numerous objections and in arguing for a

lesser sentence. The defendant has not established that his attorney's actions were unreasonable or prejudicial.

## CONCLUSION

For the above and foregoing reasons, this motion should be denied. The defendant's claims concerning his sentencing are not cognizable and are procedurally barred. Nevertheless, they are meritless, for, as the sentencing transcript demonstrates, the Court assured that the sentencing was held in accordance with the Fifth Circuit's mandate. The attorney was effective during this sentencing. He filed numerous objections, submitted mitigating information, and argued for a lesser sentence.

    Respectfully submitted by:

    ALEXANDER C. VAN HOOK
    Acting United States Attorney

BY:  *s/ Cristina Walker*

    CRISTINA WALKER (#8497)
    Assistant United States Attorney
    300 Fannin Street, Suite 3201
    Shreveport, LA 71101-3068
    (318) 676-3600

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Response by the United States to Defendant's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to the *pro se* defendant by placing a copy of same in the United States Mail as follows:

    Mr. Christopher Douglas
    #19750-035
    FCI – Forrest City Medium
    P. O. Box 3000
    Forrest City, AR 72336.

Lafayette, Louisiana, this the 18th day of May, 2021.

                              Respectfully submitted,

                              ALEXANDER C. VAN HOOK
                              Acting United States Attorney

                BY: *s/ Cristina Walker*
                              CRISTINA WALKER (#8497)
                              Assistant United States Attorney
                              300 Fannin Street, Suite 3201
                              Shreveport, LA 71101-3068
                              (318) 676-3600